UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE, SUCCESSOR-IN-INTEREST
TO BANK OF AMERICA, N.A., AS
TRUSTEE, SUCCESSOR BY MERGER TO
LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE, FOR THE
REGISTERED HOLDERS OF J.P.
MORGAN CHASE COMMERCIAL
MORTGAGE SECURITIES TRUST 2006-
CIBC17, COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2006-CIBC17,

      Plaintiff,

v.               CIVIL ACTION NO. 3:14-cv-62-GMG
                 JUDGE GROH

SAYONA HOSPITALITY, LLC,

      Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 19, 2014, Plaintiff U.S. Bank National Association, as Trustee, successor-in-interest to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC17, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC17 ("Plaintiff") filed an Emergency Motion for Appointment of a Receiver [ECF No. 6] requesting that the Court appoint FAWV Associates LLC, a West Virginia limited

1

liability company (hereinafter "FAWV") as receiver to manage and operate the Hotel and collect the Rents during the pendency of this action or until the Property is sold at foreclosure sale.[1]

Plaintiff is a secured lender with a first priority security interest in certain Property primarily comprised of a hotel known as the Holiday Inn Express—Martinsburg North (the "Hotel"). Plaintiff's collateral includes the profits generated by the Hotel's operations (as more specifically defined in Plaintiff's Verified Complaint, the "Rents").

Defendant Sayona Hospitality, LLC ("Defendant") owns and operates the Hotel. Defendant is in default of its obligations owed to the Plaintiff pursuant to that certain loan made by the Plaintiff on or about September 26, 2006 and the Loan Documents evidencing the same, and that certain Loan Modification Agreement dated effective as of December 15, 2010. ("Loan Documents.") Among other things, Defendant has failed to pay the regularly-scheduled payments due under the Loan Documents and has failed to make deposits into a restricted account pursuant to the terms of the loan documents since early April, 2014. Plaintiff has provided Defendant with notice of its default and has accelerated the balance due on the unpaid balance of the obligation owed all in accordance with the terms of the loan documents.

## II. FINDINGS OF FACT

Based on the Plaintiff's Verified Complaint, Plaintiff's Memorandum in Support of Plaintiff's Emergency Motion for Appointment of Receiver and attachments [ECF No. 6] and on Plaintff's Motion [ECF No.   ], the Undersigned makes the following findings of fact by a preponderance of the evidence. *See Miller v. Van Schaick,* 6 F. Supp. 633, 637 (S.D.N.Y. 1934).

1) On or about September 27, 2006, Defendant borrowed $3,750,000.00 (the "Loan") from JPMorgan Chase Bank, N.A. ("Original Lender). The Loan is evidenced by that

---

[1] On June 25, 2014, the Plaintiff also filed a Motion for Entry of Consent Order Appointing Receiver and filed a "Consent Order Appointing Receiver" signed by both parties.

certain Fixed Rate Note dated September 27, 2006 given by Defendant payable to the order of Original Lender in the original principal amount of the Loan (the "Note).

2) The Loan is secured by, among other things, that certain Deed of Trust and Security Agreement dated September 27, 2006 given by Defendant for the benefit of Original Lender, recorded as Transaction #2006035896 in Deed of Trust Book 01995 at Page 00207 in the Berkeley County, West Virginia Clerk's Office (the "Clerk's Office") on September 28, 2006 (the "Deed of Trust")

3) The Loan is further secured by that certain assignment of leases and rents dated September 27, 2006, given by the Defendant wherein (a) Defendant absolutely and unconditionally assigned the Rents to Original Lender, and (b) Original Lender granted Defendant a revocable license to collect the Rents. Original Lender's security interest in the Personal Property, including the Leases and the Rents, was perfected by filing a UCC Financing Statement with the West Virginia Secretary of State on October 4, 2006 with file number 200600965715 (the "Financing Statement").

4) Original Lender assigned the Loan and the Loan Documents to LaSalle Bank National Association, as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC17, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC17 ("Interim Holder"), as evidenced by that certain Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents given by Original Lender to Interim Holder, recorded as Transaction #2007017263 in Deed Book 00868 at Page 00227 in the Clerk's Office on May 11, 2007.

5) Bank of America, N.A., as successor by merger to Interim Holder, further assigned the Loan and the Loan Documents to Plaintiff. Plaintiff is the present owner of all right, title and interest in and to the Loan and the Loan Documents.

6) Beginning February 1, 2010, Defendant failed to make the required payments of principal and interest and other sums (along with other defaults, the "2010 Defaults"). As a result of the 2010 Defaults, Bank of America, N.A., as successor by merger to Interim Holder, accelerated the Loan and scheduled a non-judicial foreclosure sale. The Loan was ultimately reinstated and modified pursuant to that certain Modification Agreement dated effective as of December 15, 2010 (the "Modification Agreement").

7) Pursuant to the Modification Agreement, Defendant entered into that certain Cash Management agreement dated as of December 15, 2010 (the "Cash Management Agreement"). Pursuant to the Cash Management Agreement, Defendant is required to deposit the Rents into a clearing account (the "Restricted Account") within two business days of receipt.

8) Any Rents deposited into the Restricted Account are transferred to a separate account (the "Cash Management Account") from which the Rents are used to pay the items in priority as set forth in the Cash Management Agreement, which items include, operating expenses, taxes and insurance reserves, and the regularly-scheduled installment payments of principal and interest due under the Loan Documents.

9) The Hotel is operated as a Holiday Inn Express pursuant to that certain Holiday Inn Express Change of Ownership License Agreement dated March 24, 2004 between

4

Holiday Hospitality Franchising, Inc., as licensor, and Defendant, as licensee (the "License Agreement"). The License Agreement will expire on June 30, 2014.

10) Defendant has not deposited any Rents into the Restricted Account since (at the latest) early-April (the "Diversion Default").

11) As Rents were not deposited into the Restricted Account in accordance with the Cash Management Agreement, there were insufficient funds in the Restricted Account and the Cash Management Account to pay the regularly-scheduled payments due under the Loan Documents on May 1, 2014 and June 1, 2014. Further, the Defendant has not made direct payments to the Plaintiffs (collectively, the "Payment Defaults").

12) Plaintiff provided notice of the Diversion Default and the Payment Defaults on May 29, 2014, pursuant to the terms of the loan documents and demanded that the defaults be cured.

13) The Defendant has failed to cure the Diversion Default and the Payment Defaults. By failing to make its regularly scheduled payment by May 7, 2014, the seventh (7th) calendar day after it was due, an event of default. Due to the said default the license to collect the Rents was automatically revoked and Plaintiff was immediately entitled to possession of the Rents.

14) The Plaintiff declared the entire unpaid balance of the Debt immediately due and payable, and demanded that Defendant turnover to Plaintiff the Rents accruing on and after May 7, 2014 (the "Post-Default Rents"), by letter dated June 13, 2014 ("Acceleration Letter").

15) The Defendant failed to pay the entire unpaid balance of the Debt, as demanded in the Acceleration Letter of $3,827,211.96.

16) The Hotel continues to operate and generate Post-Default Rents. Defendant has failed to turn over the Post-Default Rents to Plaintiff.

17) Defendant failed to pay the taxes assessed on the Personal Property for tax year 2013 ("Personal Property Taxes"). The Personal Property Taxes began to accrue late payment penalties after April 30, 2014. As of June 13, 2014, the total Personal Property Taxes Due were $1,436.31. Late payment penalties continue to accrue.

18) The fair market value of the Property, as appraised by the Berkeley County, West Virginia Assessor's Office, was approximately $3,202,636.67.

19) The unpaid balance of the Debt as of June 13, 2014 was at least $3,827,211.96.

### III. CONCLUSIONS OF LAW

Pursuant to its inherit equitable powers under federal common law, the United States District Court derives the authority to appoint a receiver. See Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006). This authority is presumed by federal statute and rule. See 28 U.S.C. § 959 (requiring that an appointed receiver manage and operate the subject property according to the requirements of the valid laws of the State in which such property is situated); Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought.").

Although Federal law governs whether to appoint a receiver in a diversity action, a state statute may provide a vehicle for appointment of a receiver. Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 843 (9th Cir. 2009). This Court has recently appointed receivers for distressed real estate assets based on federal common law standards and West Virginia's receivership statute,

West Virginia Code § 53-6-1 et seq. See First United Bank & Trust v. The Square at Falling Run, LLC, No. 1:11CV31, 2011 WL 1563108 (May 31, 2011 N.D.W.Va.) adopted by 2011 WL 1563027 (April 25, 2011 N.D.W.Va.) (applying factors various factors discussed below); LSCG Fund 11, LLC v. Charles Town Self Storage, LLC, 3:13-cv-51 (May 13, 2013 N.D.W.Va) (appointing receiver based, in part, on West Virginia Code § 53-6-1 et seq.).

Pursuant to the express terms of the Modification Agreement, effective as of December 15, 2010, the Defendant Borrower consented to the entry of an Order of Appointment of Receiver by a court of competent jurisdiction as additional security for the performance of the Defendant's singular obligations under the loan documents. Various federal courts have held that a borrower's contractual agreement to appointment of a receiver upon default is an independently sufficient basis for appointment of a receiver. See, e.g., Britton v. Green, 325 F.2d 377, 382 (10th Cir.1963) (holding that mortgagee was entitled to appointment of a receiver where the parties had agreed in mortgage that mortgagee was entitled to appointment of receiver); Am. Bank & Trust Co. v. Bond Int'l Ltd., 06-CV-0317-CVE-FMH, 2006 WL 2385309 (N.D. Okla. Aug. 17, 2006) ("Defendants . . . have specifically agreed in the security agreement to the appointment of a receiver in the event of a default. Defendants are in default of the Loan Documents. Accordingly, [Plaintiff] is entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreements.").

Other courts have held that although the district court retains some level of discretion, the contractual provisions "strongly support" the appointment of a receiver. Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988) ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more

events of default."); Fed. Nat. Mortgage Ass'n v. Mapletree Investors Ltd. P'ship, 10-CV-10381, 2010 WL 1753112 (E.D. Mich. Apr. 30, 2010).

Pursuant to paragraph thirteen (13) of the Modification Agreement effective December 15, 2010, Defendant has consented to the appointment of a receiver upon an Event of Default. Moreover, as consideration for Plaintiff's agreement to reinstate the Loan after the 2010 Defaults, Defendant specifically consented to entry of a form receivership order.

In Square at Falling Run, this Court applied the following factors in determining whether to appoint a receiver:

1. inadequacy of the security to satisfy the debt;

2. financial position of the debtor;

3. fraudulent conduct on defendant's part;

4. inadequacy of legal remedies;

5. imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

6. probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;

7. probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and

8. whether moving party's interests sought to be protected will in fact be well-served by receivership.

Id. (citing Brill & Harrington Investments v. Vernon Savings and Loan Association, 787 F. Supp. 250, 253–54 (D.D.C. 1992)).

In this case, the property is inadequate to satisfy the debt, based on the Berkeley County's Assessment as to fair market value. Defendant has failed to make its payments pursuant to the Loan Documents. Defendant has failed to make the required deposits into the restricted account

as required by the Cash Management Agreement between the parties and no payments have been made on the loan for the months of May and June, 2014. As the Defendant continues to operate the hotel, there is imminent danger that the property (including the rents) will be lost, concealed, injured or diminished in value.

Additionally, Defendant has failed to pay the personal property taxes, which may result in suspension of Defendant's license to do business in West Virginia and assessment of additional registration fees. W. Va. Code § 11A-2-11.

The franchise license expires June 30, 2014 and is vital to the value of the property. The loss of a franchise license significantly decreases the value of the Property and makes it more difficult to obtain a new franchise arrangement. Appointment of a receiver is necessary to stabilize the Hotel and negotiate the transition of the Hotel to a new franchise.

As the primary source of recovery for the Plaintiff is the property, the Plaintiff's legal remedies are insufficient to protect it's interest without the appointment of a receiver. To protect the Plaintiff from further diminishing the property's value as an operating entity, a receiver is necessary to collect rents and operate the hotel. As the Defendant agreed to the appointment of a receiver in the Modification Agreement, the probability of injury to the Defendant is non-existent.

Plaintiff's probability of success on its breach of contract claim is high as is supported by the loan documents.

## IV.   RECOMMENDATION

For all of the above reasons, it is **RECOMMENDED** that Plaintiff's Emergency Motion for Immediate Appointment of Receiver [ECF No. 6] be **GRANTED.** It is further

**RECOMMENDED** that Plaintiff's Motion for Entry of Consent Order Appointing Receiver [ECF No. 10] be **GRANTED** and that the District Judge enter the "Consent Order Appointing Receiver" along with Exhibit A [ECF No. 10-1 &2] as submitted.

The parties have waived their right under 28 U.S.C. § 636 to file objections to this Report and Recommendation.

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this **25** day of **June, 2014.**

/s/ Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE